# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL J. RITTER, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:06CV775HEA/MLM** |
| | ) | |
| **JAMES PURKETT,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus filed by Michael J. Ritter, Jr. ("Petitioner"). Doc. 3. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 7. Petitioner filed a Reply. Doc. 10. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 4.

## I.
## BACKGROUND

On May 15, 2000, Petitioner and Morris E. Miller were charged by Information with murder in the first degree for the murder of Cedric Townsend and with armed criminal action. Petitioner was charged as a prior and persistent offender. Resp. Ex. C at 10-12.

The testimony at Petitioner's trial was that on March 27, 1998 he was staying at the home of Debbie Brown; that Ms. Brown's friend, Ed "Morris" Miller came by her house; that Miller had rented his minivan in exchange for drugs and arranged for the persons who had the van to return it to Ms. Brown's house; that at about six p.m. the minivan and its occupants arrived at Ms. Brown's house; that the fifteen-year-old victim, Cedric Townsend, was driving the van; that the victim, Miller, and Petitioner went into the basement of Ms. Brown's house while the rest of the group waited

upstairs; that the victim and his companions left and rode around in the van; that while riding around in the van the victim received pages from Miller asking him to return to the house, which he did; that the victim got out of the minivan and went inside the house; that the victim and Miller then went to the basement to talk; that Petitioner and Ms. Brown were sitting upstairs when Brown heard a commotion in the basement; that after Petitioner then went to see what was happening Ms. Brown heard a loud noise and a scream; that Ms. Brown ran towards the basement stairs and Petitioner told her not to go into the room where Miller and the victim were because Miller was stabbing him; that subsequently Petitioner called 911 to report the minivan stolen; that officers drove the occupants of the minivan to the police station; that the occupants told officers that they thought the victim was still inside the house; that while the group was at the police station, Petitioner and Miller dragged the victim's body from the basement to the minivan and eventually dumped the victim's body into the Meramec River; that while Petitioner and Miller were disposing the body Officer Michael Martin and another officer entered Ms. Brown's house; and that Officer Martin saw a pager with blood on it on the stairs, blood on the kitchen floor, a pager which was displaying the police department phone number on it, a bloody knife on the kitchen floor, another bloody knife in the basement, and a wallet and pager both with blood on them in the living room area. Tr. 173-74, 180-82, 201, 213, 219, 230, 250, 259-60, 266, 268, 271, 293,301, 385-88. After Petitioner made a videotaped statement telling officers where to find the victim's body, the victim's decomposing body was found ten days after the murder and it was determined that he had twenty stab wounds. Tr. 314, 346.

Petitioner did not testify at his jury trial and was found guilty as charged. The court found Petitioner to be a prior and persistent offender and sentenced him to life imprisonment without the possibility of probation or parole for murder in the first degree and a consecutive term of twenty

years' imprisonment for armed criminal action.  Resp. Ex. B at 8-9.  Petitioner filed a direct appeal.  Resp. Ex. D.

On May 22, 2001, the Missouri appellate court affirmed the judgment against Petitioner.  Resp. Ex. G.  On August 2, 2000, Petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment and Sentence.  Resp. Ex. I at 4-14.  Counsel was appointed and filed an Amended Motion to Accept Untimely-Filed Motion.  Resp. Ex. I at 19-20.  After a hearing the motion court denied Petitioner leave to file an amended motion.  On January 31, 2002, counsel filed a Second Amended Motion To Accept Untimely-Filed Motion and tendered an amended Rule 29.15 motion.  Resp. Ex. I at 85-89.  The motion court again denied Petitioner leave to file an amended motion and restricted issues to those raised in Petitioner's pro se motion.  Resp. Ex. I at 91.  The motion court denied Petitioner post-conviction relief  and Petitioner filed an appeal with the Missouri appellate court.  Resp. Ex. I at 92-97; Resp. Ex. J.  On November 4, 2003, the Missouri appellate court found that the motion court's refusal to consider the amended motion was clearly erroneous and reversed and remanded the matter.  Resp. Ex. L.

On remand the motion court found Petitioner's amended motion was without merit and Petitioner filed an appeal with the Missouri appellate court.  Resp. Ex. N at 93-103; Resp. Ex. O.  On September 20, 2005, the Missouri appellate court affirmed the judgment of the motion court denying Petitioner's amended Rule 29.15  motion.  Resp. Ex. R.

On May 11, 2006, Petitioner filed a § 2254 Petition in which he raises the following issues:

(1)  Petitioner was denied his constitutional rights because he believed that attorney Anthony Anderson represented him and Attorney Anderson represented Petitioner's co-defendant, Ms. Brown, at the same time he gave Petitioner advice;

(2)  Petitioner received ineffective assistance of counsel because his trial counsel failed to investigate and call Charles Triplett as a witness at trial;

(3)  Petitioner received ineffective assistance of counsel because trial counsel failed to locate and introduce at trial records showing that neither Petitioner nor his wife owned an Ameritech pager.

Doc.  3.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings.  Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal is an abandonment of a claim.  Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted)  .  .  .  , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies."  Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).  "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim."  Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court.  Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988).  "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).  Petitioner presented the issues which he raises before this court to the Missouri appellate court.  As such, the court finds that Petitioner has exhausted his State court remedies and that he has not procedurally defaulted any of the issues which he raises before this court.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The court finds that Petitioner's § 2254 Petition was timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, Slip Op. 05-1467 at 6 (8th Cir. Nov. 30, 2006). "To obtain habeas relief, [a habeas petitioner] must be able to point to the Supreme Court precedent he thinks the [] state courts acted contrary to or applied unreasonable." Id. at 7 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." Id. at 8. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 7-8 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant

a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal

law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that

the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 543 U.S. 1189 (2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

# IV.
# EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has articulated an exception to the rule articulated in <u>Strickland</u> that to prevail on an ineffective assistance of counsel claim a habeas petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002) (citing <u>Strickland</u>, 466 U.S. at 694). The Court held in <u>Mickens</u> that:

We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case- by-case inquiry is unnecessary. <u>See</u> <u>Cronic</u>, supra, at 658-659, 104 S.Ct. 2039; <u>see also</u> <u>Geders v. United States</u>, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. <u>Cronic</u>, supra, at 659, n. 26, 104 S.Ct. 2039.

<u>Id.</u>

# V.
# DISCUSSION

**Ground 1 - Petitioner was denied his constitutional rights because he believed that attorney Anthony Anderson represented him and Attorney Anderson represented Petitioner's co-defendant, Ms. Brown, at the same time he gave Petitioner advice**:

In support of Ground 1 Petitioner argues that he believed that Attorney Anderson was representing him; that Attorney Anderson spoke with Petitioner on the telephone twice as well as in person; that Attorney Anderson drove him to the police station; that Attorney Anderson advised him to turn himself in and to tell the truth; and that Attorney Anderson's representation of Petitioner was deficient because he had a conflict of interest as he also represented Ms. Brown in whose home Cedric Townsend was stabbed and who was present in her home at the time of the stabbing. Petitioner further contends that as a result of Attorney Anderson's actions he believed that Anderson was giving him legal advice. In particular, Petitioner alleges that his rights were violated under the Fifth and Sixth Amendments.

Upon addressing the ineffective assistance of counsel issues raised by Petitioner the Missouri appellate court first considered that the two-pronged test of Strickland is applicable to claims of ineffective assistance of counsel; that to succeed on a claim of ineffective assistance of counsel a "movant must satisfy both the performance prong and the prejudice prong" of this test"; and that if a "movant fails to satisfy either prong, [the court] need not consider the other." Resp. Ex. R at 3. The court further held that "[a]ctions that constitute sound trial strategy are not grounds for ineffective assistance of claims"; that "to satisfy the first prong, a movant must overcome the presumption that any challenged action was sound trial strategy"; that "the prejudice prong of Strickland is not presumed from a showing of deficient performance"; and that to establish prejudice a "movant must show a reasonable probability that the result would have been different but for the errors of counsel." Resp. Ex. R at 4.

In particular, in regard to Petitioner's Ground 1 the Missouri appellate court held as follows:

For his first point, movant contends that the motion court clearly erred in denying his Rule 29.15 motion because movant had established an attorney-client relationship with an attorney who spoke with him, before he turned himself in to police, drove him to the police station, and advised him to tell the truth, and that attorney was ineffective because he had a conflict of interest in that he also represented Ms. Brown.

In his amended motion, movant alleged he had an attorney-client relationship with attorney Anthony Anderson, who drove movant and Ms. Brown to the police station the day after the murder. He claimed that Mr. Anderson advised him during the trip to the police station to turn himself in and tell the truth to the police. Movant further claimed that Mr. Anderson spoke with him over the phone and once in person, and that he believed Mr. Anderson represented him. Movant asserted that the statement he gave to the police was motivated by Mr. Anderson's advice to tell the truth. Finally, movant argued that Mr. Anderson had a conflict of interest because Mr. Anderson also represented Ms. Brown, who owned the house where the murder occurred, was present at the time of the stabbing, and witnessed the disposal of the body.

Mr. Anderson testified at the first evidentiary hearing that Ms. Brown, who had once worked for his law firm, telephoned him, and he drove to a drug store where he met her and movant. Ms. Brown told him about the stabbing and asked what she should do. Movant told Mr. Anderson that he "wasn't good for it," so Mr. Anderson told him to go ahead and tell the truth if the police asked him. He then drove Ms. Brown and movant to the police station. When they reached the station, Mr. Anderson told Ms. Brown and movant to go in and talk if that was what they wanted to do. Mr. Anderson informed the police that he was representing Ms. Brown, and he sat through her interrogation. Movant did not talk to the police in Mr. Anderson's presence, Mr. Anderson did not speak with movant after he gave a statement to the police, and movant did not leave with Mr. Anderson.

At trial, Detective Mark Griffin testified that Mr. Anderson told him that he was not representing movant. Det. Griffin further testified that movant did not request an attorney to be present during questioning after he was informed of his Miranda rights. Movant's trial counsel, Lois Drossman, testified at the first evidentiary hearing that Mr. Anderson had told her that he had told movant that he was not representing him.

Movant testified at the second evidentiary hearing that he did not ask Mr. Anderson to represent him until two weeks after he gave the statement to the police and that Mr. Anderson told him he would not represent him. Movant testified at both evidentiary hearings that he would have gone to the police station even if Mr. Anderson had not given him a ride.

The motion court found that Mr. Anderson did not have an attorney-client relationship with movant. The motion court further found that movant's belief that

Mr. Anderson represented him "unreasonable under the circumstances that existed" when movant gave his statement to the police. Finally, the motion court found that even if movant's belief was reasonable, there was no ineffective assistance.

An attorney-client relationship is established with evidence that supports a finding "that the 'client' sought and received legal advice and assistance and the 'attorney' intended to undertake to give such advice and assistance on the 'client's' behalf." World Resources, LID v. Utterback, 943 S.W.2d 269, 270 (Mo. App. 1997). A lawyer may make a statement or express an opinion to someone who is engaged in a transaction with the lawyer's client without intending to assume a duty to that person, "and reliance alone upon the advice or conduct of a lawyer does not create an attorney client relationship." Donahue v. Shughart, Thompson & Kilroy, P.C., 900 S.W.2d 624, 626 (Mo. banc 1995).

The evidence adduced at the evidentiary hearings supports the motion court's findings. Movant intended to go to the police station whether or not Mr. Anderson drove him. Movant did not seek to hire Mr. Anderson as his attorney during the drive to the station, and movant did not request an attorney when he was questioned by the police. Mr. Anderson told the police he was not representing movant, and told the prosecutor that he had informed movant that he was not representing him. There was no evidence to support a finding that movant sought and received legal advice and assistance from Mr. Anderson before he gave the statement to the police or that Mr. Anderson undertook to give him such advice or assistance. Mr. Anderson's advice to tell the truth did not, in these circumstances, create an attorney-client relationship. The motion court did not clearly err in denying movant's claim based on ineffective assistance of Mr. Anderson. Point one is denied.

Resp. Ex. R at 4-6.

The motion court concluded that Attorney Anderson did not represent Petitioner based on the facts adduced at evidentiary hearings including the testimony of Petitioner, Anderson, Detective Griffin, and Ms. Drossman, Petitioner's trial counsel. Significantly, Petitioner testified that he did not ask Attorney Anderson to represent him until two weeks after he gave a statement to police and that Anderson told Petitioner that he would not represent him. The Missouri appellate court found that the evidence adduced at the evidentiary hearings supports the motion court's factual conclusion.

In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327

F.3d 748, 752 (8th Cir. 2003)), <u>cert. denied</u>, 541 U.S. 996 (2004).  <u>See also</u> <u>Simmons v. Luebbers</u>, 299 F.3d 929, 942 (8th Cir. 2002).  Explicit and implicit findings by state trial and appellate courts are presumed to be correct. <u>Rushen v. Spain</u>,464 U.S. 114, 120, (1983); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983); <u>Sumner v. Mata</u>, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. <u>Ashker v. Class</u>, 152 F.3d 863, 867 (8th Cir. 1998) (citing  28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2);  <u>Smith v. Jones</u>, 923 F.2d 588, 590 (8th Cir. 1991)).  <u>See also</u>  <u>Laws v. Armontrout</u>, 863 F.2d 1377, 1381 (8th Cir. 1988).  The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. <u>See</u> <u>Case v. Mondragon</u>, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing <u>Marshall v. Lonberger</u>, 459 U.S. at 431-32; <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." <u>Id</u>.(citing <u>Brown v. Allen</u>, 344 U.S. 443, 506 (1953)).  Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d).  <u>Cornell v. Nix</u>, 976 F.2d 376, 382 (8th Cir. 1992).

While the motion court and the appellate court both found that Petitioner's assumption that Attorney Anderson was representing him was unreasonable, the motion court also concluded that even if Petitioner's belief that Attorney Anderson represented him was reasonable, there was no ineffective assistance of counsel. The motion court held that "considering Movant's representations to Mr. Anderson that neither Movant nor Ms. Brown were responsible for the stabbing, Mr. Anderson's suggestion that Movant tell the police the truth was consistent with the care and skill of a reasonably competent lawyer providing services under the same or similar circumstances."  Resp. Ex. N at 97.

Pursuant to Williams, the court will consider federal law which addresses the issue raised in Petitioner's Ground 1. The court has set forth above federal law applicable to claims of ineffective assistance of counsel. Additionally, the Supreme Court held in Mickens that, following Cuyler v. Sullivan, 446 U.S. 335 (1980), and Wood v. Georgia, 450 U.S. 261 (1981), "'a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief.'" 535 U.S. at 171 (quoting Sullivan, 446 U.S. at 349-50) (emphasis in original). Thus, even though a habeas petitioner fails to show prejudice, "he nonetheless [can] establish[] a basis for relief by showing that the alleged conflict of interest had an actual adverse effect upon [counsel's] performance." Koste v. Dormire, 345 F.3d 974, 983 (8th Cir. 2003), cert. denied, 541 U.S. 1011 (2004). The court in Koste held that the petitioner failed show such an adverse effect because he failed to allege or show that counsel's "trial preparation or legal advice was deficient in any specific way or that "any deficiency in her performance was causally connected to the alleged conflict of interest arising out of [the petitioner's] ineffective assistance claim." Id. Also, under federal law the right to counsel does not attach until "the government's role shifts from investigation to accusation." Moran v. Burbine, 475 U.S. 412, 430 (1986). Where a defendant gives a statement but has not been either arrested nor indicted and where "the government's case [has] not been developed enough to enable charges to be filed," the defendant does not enjoy a Sixth Amendment right to counsel. Rachlin v. United States, 723 F.2d 1372, 1378 (8th Cir. 1983). Under such circumstances, "judicial proceedings [have] not yet attached." Id. (citing Kirby v. Illinois, 406 U.S. 682, 689 (1972)).

"The Fifth Amendment right to counsel attaches upon custodial interrogation." Rachlin, 723 F.2d at 1378 (citing Miranda v. Arizona, 384 U.S. 436 (1966)). Ineffectiveness of counsel may violate the Fifth Amendment when proceedings are "fundamentally unfair." Habchy v. Gonzales, 471

F.3d 858, 865(8th Cir. 2006) (citing <u>Obleshchenko v. Ashcroft</u>, 392 F.3d 970, 971 (8th Cir.2004)

(other citations omitted).  Further, under federal law:

> [T]he fifth amendment right to counsel arises at "custodial interrogation," <u>see</u>
> <u>Miranda v. Arizona</u>, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966),
> a point which frequently occurs earlier in the investigative sequence than "adversary
> judicial proceedings," the fifth amendment right to counsel is not an independent right;
> rather, it stems from the privilege against self-incrimination. <u>See</u> <u>Kennedy v. Fairman</u>,
> 618 F.2d 1242, 1247-48 (7th Cir.), <u>cert. dismissed</u>, 449 U.S. 939, 101 S.Ct. 339, 66
> L.Ed.2d 206 (1980). Thus, the fifth amendment right to counsel only protects a
> defendant's privilege against making incriminating statements against himself. <u>See</u>
> <u>Smith v. Wainwright</u>, 581 F.2d 1149, 1151-52 (5th Cir.1978) ... .

<u>Hall v. State of Iowa</u>, 705 F.2d 283, 289 n.4 (8th Cir. 1983).

Upon considering the issue of Petitioner's Ground 1, the Missouri appellate court considered

that <u>Strickland</u>'s two-pronged test is applicable to Petitioner's ineffective assistance of counsel claims.

 The appellate court concluded, however, that there was no attorney-client relationship between

Petitioner and Attorney Anderson and that, therefore, there could be no ineffective assistance of

counsel.  To the extent that this conclusion is factual in nature, it is presumed to be correct. <u>Rushen</u>,

464 U.S. at 120; <u>Marshall</u>, 459 U.S. at 432; <u>Sumner v. Mata</u>, 449 U.S. at 550; <u>Hall</u>, 341 F.3d at 712.

Petitioner has not suggested  "clear and convincing" evidence to overcome this  presumption.  <u>See</u>

<u>Ashker</u>, 152 F.3d at 867.  Additionally, consistent with <u>Strickland</u>, 466 U.S. at 688-89, the motion

court considered, alternatively, that even if an attorney client relationship existed between Attorney

Anderson and Petitioner that Anderson's representation was consistent with the care and skill of a

reasonably competent attorney under the circumstances.  The court finds, therefore, to the extent the

State appellate court addressed the issues raised in Petitioner's Ground 1 in terms of the Sixth and

Fifth Amendment right to effective assistance of counsel, that the decision of the State court in regard

to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable

application of federal law. The court further finds that the State court reasonably applied federal law to the facts of Petitioner's case.

To the extent that the State court did not consider the application of the Fifth Amendment to Petitioner's claim of ineffective assistance of counsel, this court must apply a pre-AEDPA standard to Petitioner's claim. See Brown, 371 F.3d at 461. The State court did, however, clearly find that Petitioner testified that he did not ask Attorney Anderson to represent him until two weeks after he gave his statement to police and that Attorney Anderson refused to represent him. Further, State court determined that Petitioner had no reasonable basis upon which to believe that Attorney Anderson represented him at any time and that he waived his right to have an attorney present after he was given his Miranda rights. Thus, as a Fifth Amendment right to counsel attaches upon a custodial interrogation and as Petitioner contends that he was denied effective assistance of counsel because without counsel's advice he would not have voluntarily gone to the police station, the court finds that Petitioner's Fifth Amendment right to counsel cannot have been violated; the factual findings of the State court do not support a legal conclusion that Petitioner was denied the Fifth Amendment right to counsel. See Habchy, 471 F.3d at 865; Rachlin, 723 F.2d at 1378; Hall, 705 F.2d at 289 n.4. As such, the court finds that Petitioner's Ground 1 is without merit and that relief on its basis should be denied.

**Ground 2 - Petitioner received ineffective assistance of counsel because his trial counsel failed to investigate and call Charles Triplett as a witness at trial:**

In support of Ground 2 Petitioner argues that Charles Triplett could have been located through reasonable investigation and would have testified if called as a witness and that Triplett's testimony would have provided a defense for Petitioner because he would have testified that the scratches on Petitioner's face "were obtained through helping Mr. Triplett and Jr. Judd move." In particular, Petitioner contends that his rights were violated under the Fifth and Sixth Amendments.

As set forth above, prior to considering the individual ineffective assistance claims raised by Petitioner, the Missouri appellate court held that <u>Strickland</u> is applicable to claims of ineffective assistance of counsel. Further, upon addressing the issue of Petitioner's Ground 2, the Missouri appellate court held:

> For his second point, movant contends that his trial counsel was ineffective for failing to investigate and call Charles Triplett as a witness because Mr. Triplett would have testified that movant obtained the scratches on his body when movant was helping Mr. Triplett move on the day after the murder, and the scratches were not obtained during the commission of the murder, confirming what movant told police.
>
> At trial Det. Griffin testified that he photographed movant's injuries when movant was interviewed on March 28, 1998. The photographs, which were received into evidence, showed that movant had a number of fresh cuts and bruises. In his amended motion, movant alleged that Mr. Triplett would have been available and willing to testify that movant helped him move on March 28, 1998, and that movant was cut and bruised by the metal lid of a container that slipped while movant was carrying it down a staircase.
>
> At the first evidentiary hearing, Mr. Triplett testified that movant helped him move on March 28, 1998, and that movant attempted to move a large blue barrel down some steps and almost dropped it, but that he did not see movant get hurt as a result. At the second hearing, Mr. Triplett testified that he did not remember the date of the move and he did not see any wounds on movant after movant moved the barrel.
>
> The motion court found that trial counsel's decision not to call Mr. Triplett was reasonable trial strategy because the proffered testimony that movant obtained the scratches in a move would not have been admissible and was not probative of movant's defense. An attorney's selection of witnesses and the introduction of evidence are questions of trial strategy. <u>Leisure v. State</u>, 828 S.W.2d 872, 875 (Mo. banc 1992). An attorney's decision not to call a witness to testify, as a matter of trial strategy, is virtually unchallengeable. <u>Id.</u> "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance of counsel." <u>Id.</u> Mr. Triplett's testimony would not have supported movant's claim that he received the scratches and bruises while helping Mr. Triplett move. Accordingly, trial counsel's decision not to call Mr. Triplett was reasonable trial strategy. <u>See</u> <u>State v. Jones</u>, 885 S.W.2d 57, 58 (Mo. App. 1994).
>
> The trial court did not clearly err in denying movant's claim of ineffective assistance of counsel based on the failure to call Mr. Triplett as a defense witness. Point two is denied.

Resp. Ex. R at 7-8.

Pursuant to <u>Williams</u> the court will consider federal law applicable to the issue raised in Petitioner's Ground 2. As discussed above, the Supreme Court holds that judicial scrutiny of counsel's performance must be highly deferential and that trial counsel's performance must not be judged in hindsight. <u>Strickland</u>, 466 U.S. at 688-89. Counsel must exercise reasonable diligence to produce exculpatory evidence. <u>Kenley v. Armontrout</u>, 937 F.2d 1298, 1304 (8th Cir. 1991). The Eighth Circuit has stated that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" <u>Hanes v. Dormire</u>, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." <u>Id</u>. The decision whether to call witnesses ... or introduce evidence may be a matter of trial strategy. <u>Hall v. Lubbers</u>, 296 F.3d 685, 694 (8th Cir. 2002); <u>Battle v. Delo</u>, 19 F.3d 1547,1556 (8th Cir. 1994). "Strategic decisions 'made after thorough investigation of law and facts ... are virtually unchallengeable,' even if that decision later proves unwise." <u>Strickland,</u> 466 U.S. at 590.

Upon considering the issue of Petitioner's Ground 2, the Missouri appellate court first considered that the two-pronged test of <u>Strickland</u> is applicable to claims of ineffective assistance of counsel. The appellate court further considered Detective Griffin's testimony at trial that Petitioner had fresh wounds when he was interviewed on March 28, 2998. The appellate court also considered Mr. Triplett's testimony at the first evidentiary hearings that he did not see Petitioner get hurt when he helped Mr. Triplett move and at the second evidentiary hearing that he did not remember the date of the move nor did he see any wounds on Petitioner. Consistent with <u>Strickland</u> the Missouri appellate court concluded that the failure to call Mr. Triplett was reasonable trial strategy because

Mr. Triplett's testimony would not have supported Petitioner's "claim that he received scratches and bruises while helping Mr. Triplett move."  Moreover, because Mr. Triplett's testimony would not have supported Petitioner's claim regarding the source of his scratches and bruises, it cannot be said that Petitioner was prejudiced by counsel's failure to call Mr. Triplett.  Under such circumstances Petitioner cannot establish the prejudice prong of the Strickland test for ineffective assistance of counsel for counsel's failure to call Mr. Triplett.  Further, consistent with federal law, the Missouri appellate court considered that the decision to call or not to call witnesses is a matter of trial strategy and that trial strategy is "virtually unchallengeable." Resp. Ex. R at 8.  See  Strickland, 466 U.S. at 590;  Hall,  296 F.3d at 694;  Battle, 19 F.3d at 1556.

As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law.  See Strickland, 466 U.S. at 688-90; Hanes, 240 F.3d at 698; Hall, 296 F.3d at 694. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

To the extent that the State court did not consider the application of the Fifth Amendment to the issue raised in Petitioner's Ground 2, this court must apply a pre-AEDPA standard.  See Brown, 371 F.3d at 461.  The State court did find, however, that Triplett testified that he did not remember the date that Petitioner helped him move and that, as such, Triplett would not have supported Petitioner's claim that he received scratches during this move rather than during the murder.  Based on these factual findings of the State court  this court finds that the failure of trial counsel to call Triplett did not result in a trial which was fundamentally unfair.  Under such circumstances, the court further finds that Petitioner's Fifth Amendment rights were not violated by counsel's failure to call Triplett.  See Habchy, 471 F.3d at 865; Rachlin, 723 F.2d at 1378; Hall, 705 F.2d at 289 n.4.  The

court finds, therefore, that Petitioner's Ground 2 is without merit and that relief on its basis should be denied.

**Ground 3 - Petitioner received ineffective assistance of counsel because trial counsel failed to locate and introduce at trial records showing that neither Petitioner nor his wife owned an Ameritech pager:**

In support of Ground 3 Petitioner argues that counsel should have introduced evidence that Miller owned an Ameritech pager and that Petitioner did not. Petitioner contends that trial counsel's failure in this regard violated his rights under the Fifth and Sixth Amendments.

Relevant to Petitioner's Ground 3 the Missouri appellate court stated that:

Police officers found an Ameritech pager on a couch in the upstairs living room in Ms. Brown's house along with a wallet containing movant's identification. The pager bore Mr. Miller's blood, and the wallet bore unidentified blood stains. One officer testified that he believed the pager belonged to movant, and the other testified that he "determined" that the pager belonged to movant.

Resp. Ex. R at 8.

In support of Ground 3 Petitioner contends that his trial counsel was ineffective "for failing to locate and introduce [evidence] that neither Petitioner or his wife had ever owned or leased an Ameritech pager but that Mr. Miller had one." Petitioner further states in support of Ground 3 that police found a pager, which was bloodstained, on the sofa in Ms. Brown's home; that Petitioner was "deprived of the opportunity to impeach Sgt. Martin's and Officer Griffin's testimony that the pager belonged to Petitioner; that the State was allowed to argue, as a result of ineffective assistance of counsel, that the pager was evidence of Petitioner's guilt; and that the "Ameritech pager business records were relevant and material to Petitioner's defense that he was not working in concert with Mr. Miller."

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held as follows:

> For his third point, movant claims that the motion court clearly erred in denying his Rule29.15 motion because trial counsel was ineffective for failing to locate and introduce evidence showing that neither he nor his wife ever owned an Ameritech pager. Movant contends that he was prejudiced because he was deprived of the opportunity to impeach the testimony of two officers that a bloodstained pager found at the crime scene belonged to movant, and this evidence allowed the state to argue that the pager was evidence of movant's guilt.
>
> ...
>
> In his amended motion, movant alleged that counsel was ineffective for failing to introduce evidence that Ameritech had never sold or leased a pager to movant or his wife, but, that Mr. Miller did have a pager. Movant alleged he was prejudiced because the evidence suggested that he had acted in concert with Mr. Miller, by letting him use movant's pager. At the first evidentiary hearing, trial counsel testified that, in her opinion, the ownership of the pager was immaterial and irrelevant:
>
> > A. Well, I don't think it would be relevant. I mean, we know Mr. Miller was there. We know Mr. Ritter was there. The pagers were there. It has really absolutely nothing to do with anything. They did not find Mr. Ritter's fingerprints or blood or anything on either pager. Mr. Ritter never denied that he was present in the home when this went down. So whether or not a pager was his or not, I never believed was relevant to anything.

She again testified:

> > A. I didn't think it was important. I didn't think it was relevant to our defense at all because our defense was that even[ ]though Michael was in the house, he had absolutely nothing to do with the stabbing which took place a floor below, and he was not involved in that in any way, shape or form. And so it didn't matter whether the beeper was his or not his.

> She further testified that the defense was that movant was not aware of the stabbing until after the fact. In addition, counsel testified that the ownership of the pager would not have disproved that movant and Mr. Miller acted together:
>
> > Q. Evidence that they acted together, would that be exculpatory or inculpatory?
> > A. That would be inculpatory, but I never believed that the presence of a pager or two pagers or half a dozen pagers had anything to do

with proving that they acted together because there was nothing - - there was no evidence introduced by the State that the pagers were used for anything. Mr. Ritter's fingerprints were not found on either pager. His DNA was not on it. It was on the couch. It was by his wallet. It was as relevant as the fact that his wallet was on the couch, which is not relevant at all. That was my belief.

Q. Did you object to its admission into evidence since it was irrelevant?

A. I don't think I did.

Q. Well, if two co-defendants are charged with acting together and the State establishes that a pager belongs to one person, one defendant, and it has blood on it from another Defendant, would that not tend to prove the testimony that the two are acting in concert together?

A. No, I don't think so.

Q. Would it be more or less likely to prove that if the blood on the pager belonged to the actual owner of the pager?

A. I don't think that in the case we're talking about unless it had Mr. Ritter's blood on it, it was relevant to anything. I still don't believe that.

Q. Which evidence would have been more exculpatory for Mr. Ritter, in your opinion as a trial attorney; the pager belonging to Mr. Miller with Mr. Miller's blood on it or the pager belonging to Mr. Ritter with Mr. Miller's blood on it? Which would be better for Mr. Ritter, in your opinion?

A. I don't think either one would be. I think it would be not relevant.

The motion court found that the "right to possession of the pager was not critical to this case." As a result, the motion court concluded that evidence of ownership, or lack thereof, would only affect the weight to be given to the pager evidence, not its admissibility.

A claim of ineffective assistance of counsel for failure to investigate must be supported by allegations that 1) specific information was not discovered, 2) reasonable investigation would have uncovered the specific information, and 3) discovery of the information would have benefitted movant's case. State v. Aziz, 844 S.W.2d 531, 536 (Mo. App. 1992). A movant has the burden of proving his asserted grounds for relief by a preponderance of the evidence. Id.

Even if movant had evidence that the pager was not his, this evidence would not have provided him with a defense. First, movant was not contesting that he was present in the house when the stabbing took place. The location of the pager was consistent with his presence in the upstairs living room. Second, evidence that the pager was not his would not have disproved that he did not act with Mr. Miller in stabbing the victim. At most, such evidence would have created a factual dispute that would only go to the weight of the officers' testimony on ownership of the pager. The claim that the jury may have relied on the presence of Mr. Miller's blood on the pager

to conclude that movant acted in concert with Mr. Miller is speculative. The state did not argue this, and there was other, far stronger evidence of concerted action.

Further, evidence that movant did not own a pager found with his wallet in the upstairs living room, where he was admittedly staying, would not have supported a finding that he did not participate in the murder, which took place in the basement, a floor below. Accordingly, counsel was not ineffective for failing to adduce this evidence. Bradley v. State, 995 S.W.2d 522, 524(Mo. App. 1999). See also State v. Talkington, 858 S.W.2d 802, 806 (Mo. App. 1993). It was reasonable trial strategy for counsel not to try to contradict evidence on collateral and irrelevant issues and focus instead on the defense. Since movant's presence was conceded, the ownership of the pager would not have established an element or provided a defense. State v. Greer, 918 S.W.2d 327, 331 (Mo. App. 1996).

The motion court did not clearly err in denying movant's claim that counsel was ineffective for failing to introduce evidence of the ownership of the paper. Point three is denied.

Resp. Ex. R at 8-11.

Pursuant to Williams the court will consider federal law applicable to the claim raised in Petitioner's Ground 3. The court has set forth above federal law applicable to a claim of ineffective assistance of counsel. Additionally, as stated above, the decision of counsel to introduce evidence is a matter of trial strategy. Hall, 296 F.3d at 694; Battle, 19 F.3d at 1556. As further stated above, counsel must be reasonably diligent to produce exculpatory evidence. Kenley, 937 F.2d at 1304. Further, under federal law, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland at 690-691.

Upon considering the issue of Petitioner's Ground 3 the Missouri appellate court first considered that the two-pronged test of Strickland is applicable to Petitioner's claims of ineffective assistance of counsel. The Missouri appellate court then considered the facts relevant to Petitioner's claim including the facts that Petitioner did not deny being at Ms. Brown's house; that Petitioner's

fingerprints or blood were not found on the pager; that Petitioner's counsel thought that ownership of the pager was not relevant to Petitioner's defense or to whether or not he and Mr. Miller were acting together; and that the pager was found in the living room and the murder took place on the floor below.  Based on these facts, the Missouri appellate court concluded, consistent with the first prong of Strickland, that it was reasonable trial strategy for Petitioner's counsel not to attempt to contradict evidence which was collateral to Petitioner's defense.  Further, based on these facts, the Missouri appellate court concluded that even if there was evidence that the pager was not Petitioner's such evidence would not have provided Petitioner with a defense.  Under such circumstances, it cannot be said that the second prong of the Strickland test, prejudice, was met.  As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law.  Additionally, the court finds that the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case.

To the extent that the State court did not consider the application of the Fifth Amendment to the issue raised in Petitioner's Ground 3, this court must apply a pre-AEDPA standard.  See Brown, 371 F.3d at 461.  The court finds, based on the factual conclusions of the State court, that the failure of counsel to locate and introduce at trial records showing that neither Petitioner nor his wife owned an Ameritech pager did not render Petitioner's trial fundamentally unfair and did not violate his rights under the Fifth Amendment.  See Habchy, 471 F.3d at 865; Rachlin, 723 F.2d at 1378; Hall, 705 F.2d at 289 n.4.  The court finds, therefore, that Petitioner's Ground 3 is without merit and that relief on its basis should be denied.

**VI.**
**CONCLUSION**

For the reasons stated above, the court finds that the issues which Petitioner raises in his §2254 Petition are without merit. As such, Petitioner's § 2254 petition for habeas relief should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 should be **DISMISSED**; Doc. 3

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/ Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this 22nd day of May, 2007.        UNITED STATES MAGISTRATE JUDGE